UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES MICHAEL BROWN,

    Plaintiff,

    v.      CAUSE NO. 3:24-CV-547-GSL-AZ

SGT. BROOMFIELD, et al.,

    Defendants.

OPINION AND ORDER

James Michael Brown, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 9.) Pursuant to 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Brown is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Brown is currently incarcerated at Miami Correctional Facility ("MCF"). His original complaint was stricken because it raised unrelated claims against unrelated

defendants. (ECF 7.) He was granted an opportunity to file an amended complaint containing only related claims, and he responded with the present pleading.

Mr. Brown claims that beginning in March 2024, he was housed in a cell with a gang member whom he refers to as "Celly Henson."[1] Shortly after they were placed together, Celly Henson pulled a knife on him during a dispute about Mr. Brown's belongings. Mr. Brown spoke with some officers about what happened, and they in turn alerted Sergeant Serina Day. Brown explained to Sergeant Day that he was in danger from his cellmate, who had a knife in his possession. Sergeant Day put him in handcuffs and escorted him back to his cell. When they arrived, she allegedly told Celly Henson that if Mr. Brown needed to be moved she "would need to do paperwork." She then left, at which point Celly Henson became angry and told Mr. Brown that he was a "rat." Mr. Brown later fell asleep and awoke to being "sucker punched" by Celly Henson, who proceeded to hit him in the head repeatedly with a television set.

Later that day Officer James Drummond was delivering food trays to Mr. Brown's cell. Mr. Brown made "furtive" gestures toward Celly Henson and whispered to Officer Drummond, "Please get me out of here." Officer Drummond handcuffed him and took him to "OSB," which appears to be another area of the prison. Once there, he spoke with Officer Mark Broomfield and Officer Drummond, telling them that his cell mate had been threatening him with a knife. He showed the officers marks on his neck

---

[1] The court notes that Mr. Brown's handwriting is somewhat difficult to decipher, including where he provides the names of the individuals involved in these events. The court has endeavored to accurately construe his allegations.

2

and an area where his shirt was torn from an altercation they had. Despite receiving this information, Officer Broomfield allegedly told Officer Drummond to take Mr. Brown back to his cell.

When they arrived at the cell, Mr. Brown claims he pleaded with Officer Drummond to call a lieutenant because he was very concerned about his safety. Officer Drummond allegedly responded that he understood Mr. Brown's concern but that he was just "doing what he is told." The officer did not call a superior officer and took no action to search for the knife Mr. Brown claimed Celly Henson had in his possession. Instead he simply put Mr. Brown back in the cell and left. Shortly thereafter, Celly Henson attacked him with a knife, causing stab wounds to his leg, hip, and face which necessitated surgery and other treatment.

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). To be held liable, a defendant must have "acted with the equivalent of criminal recklessness, in this

3

context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

Giving Mr. Brown the inferences to which he is entitled, he has alleged a plausible Eighth Amendment claim against Sergeant Day, Officer Broomfield, and Officer Drummond. He claims that he alerted them to a specific threat to his safety posed by his cellmate, but they allegedly took no steps to help him. Sergeant Day allegedly exacerbated the situation by effectively telling Celly Henson that Mr. Brown had complained about him. Officer Broomfield allegedly had him returned to the cell with Celly Henson even though he told him Celly Henson had a knife in his possession and had been threatening him. Officer Drummond claimed to be only following orders, but he also took no steps to contact a superior officer or to remove the knife that Mr. Brown told him Celly Henson had in his possession. As a result of their actions and inaction, Mr. Brown was assaulted twice, the first time getting hit in the head with a television set and the second time being brutally stabbed. He will be permitted to proceed on a claim for damages against these defendants.

Mr. Brown also claims to have an ongoing need for protection from other inmates. Although it can be discerned that he was removed from the cell with Celly Henson, he claims other inmates heard about the incident and have been threatening him with physical harm for being a "snitch." The Warden of MCF has both the authority and the responsibility to ensure that inmates at his facility are protected from harm posed by other inmates as required by the Eighth Amendment. *See Gonzalez v.*

4

*Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Based on his allegations, the Warden will be added as a defendant and Mr. Brown will be permitted to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for protection from other inmates.

He separately moves for a preliminary injunction asking that he be placed in protective custody or otherwise moved to a secure area while this case is pending. (ECF 11.) "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022).

5

Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant" like the one sought by Mr. Brown—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

The court also must consider the Supreme Court's admonition that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prisoners do not have a constitutional right to the housing assignment of their choice, and where best to house a prisoner is ordinarily a matter

committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

At present, the court only has Mr. Brown's version of events and it is difficult to assess the likelihood that he will be harmed by other inmates if injunctive relief is not granted while this case is pending. In light of the deference owed to prison officials in the management of their facilities and the limitations on granting injunctive relief in the correctional setting, the court will order the Warden to respond before taking further action on Mr. Brown's request for a preliminary injunction.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Sergeant Serina Day, Officer James Drummond, and Officer Mark Broomfield in their personal capacity for money damages for failing to protect him from being attacked by his cell mate in violation of the Eighth Amendment;

(2) DIRECT the clerk to add the Warden of Miami Correctional Facility as a defendant;

(3) GRANTS the plaintiff leave to proceed against the Warden of Miami Correctional Facility in his official capacity for injunctive relief related to his ongoing need for protection from other inmates at that facility;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on)

the Warden of Miami Correctional Facility by email to the Indiana Department of Correction with a copy of this order, the amended complaint (ECF 9), and the motion for a preliminary injunction (ECF 11) pursuant to 28 U.S.C. § 1915(d);

(6) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Miami Correctional Facility at Miami Correctional Facility;

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Serina Day, Officer James Drummond, and Officer Mark Broomfield at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 9) pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(9) ORDERS the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **October 22, 2024**, with supporting documentation and declarations from staff as necessary, addressing his current need for protection from other inmates and, if applicable, the steps being taken to protect him from harm; and

(10) ORDERS the Warden, Sergeant Serina Day, Officer James Drummond, and Officer Mark Broomfield to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

8

SO ORDERED on September 20, 2024

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT